IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GNC FRANCHISING, LLC, formerly known as GNC FRANCHISING, INC. and GENERAL NUTRITION CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>SHABANA FARID, MAZHAR FARID and VITAL, INC.,<br><br>Defendants. | 2:05-cv-1741 |

**MEMORANDUM OPINION AND ORDER OF COURT**

Before the Court for consideration and disposition are PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS, with brief in support (*Document Nos. 11 & 12*), DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS (*Document No. 30*), and the REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS (*Document No. 31*). The issues have been fully briefed, and the motion is ripe for disposition. For the reasons which follow, the Motion will be granted in part and denied in part.

Background

On December 16, 2005, plaintiffs GNC Franchising, LLC and General Nutrition Corporation (collectively "GNC") filed a Complaint against defendants Shabana Farid, Mazhar Farid and Vital, Inc. ("Defendants"), who are GNC franchisees. The Complaint alleges breach of contract (Counts I & II), Trademark Infringement (Count III), a violation of the Lanham Act (Count IV), and breach of a covenant not to compete (Count V). On March 24, 2006, Defendants filed an Answer, Affirmative Defenses and Counterclaim. The Counterclaim alleges Tortious Interference (Count I), Fraudulent Inducement/ Negligent Misrepresentation (Count II), and Breach of Contract and the Covenant of Good Faith and Fair Dealing (Count III). GNC has moved to dismiss all counts of the Counterclaim.

<u>Standard of Review</u>

The Federal Rules of Civil Procedure do not require detailed pleading of the facts on which a claim is based, they simply require "a short and plain statement of the claim showing that the pleader is entitled to relief," which statement is sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Fed.R.Civ.P. 8(a)(2); *see also Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 8(a)(2) establishes a minimum notice pleading standard "which relies on liberal discovery rules and summary judgment motions to ... dispose of unmeritorious claims." *Swierkiewicz v. Sorema,* 534 U.S. 506 (2002). Claims lacking merit are more appropriately dealt with through summary judgment pursuant to Rule 56. *Id.*

When considering a motion to dismiss pursuant to Rule 12(b)(6) the Court accepts as true all well pleaded allegations of fact. *Pennsylvania Nurses Ass'n. v. Pennsylvania State Educ. Ass'n.*, 90 F.3d 797, 799-800 (3d Cir. 1996), *cert. denied*, 519 U.S. 1110 (1997). In addition, the Court must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-movant. *General Motors Corp. v. New A.C. Chevrolet, Inc.,* 263 F.3d 296, 325 (3d Cir. 2001). Dismissal is appropriate only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Lorenz v. CSX Corp.*, 1 F.3d 1406, 1411 (3d Cir. 1993).

<u>Discussion</u>

<u>COUNTERCLAIM</u>

A.   <u>Count I - Tortious Interference</u>

The sum and substance of Count I is as follows:

GNC has interfered with DP (Direct Purchase) vendor sales directly to Counterclaimants by requiring third party vendors to sell their product first to GNC's distribution subsidiary, GND, if they wanted to sell to Counterclaimants.

GNC purposefully, impermissibly, and without privilege acted to interfere with Counterclaimants' and other franchisees' ability to purchase products from third

>party or "Direct Purchase" (DP) Vendors.
>
>Prior to GNC's May 2004 change in policy to restrict franchisee's (*sic*) ability to contract with and purchase products directly from third party vendors, Counterclaimants had a number of popular and profitable third party products which GNC had approved for sale in Counterclaimants' stores.

Counterclaim at ¶¶ 76-78.

GNC contends that Count I should be dismissed because the Counterclaim fails to plead 1) the existence of a contractual relationship with a third party, 2) that GNC induced any party to breach an agreement with Defendants, 3) pecuniary loss, and 4) the absence of privilege or justification for GNC's alleged acts. Motion at 1.

Under Pennsylvania law, the elements of a cause of action for intentional interference with an existing or prospective contractual relationship are as follows:

>(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;
>(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
>(3) the absence of privilege or justification on the part of the defendant; and
>(4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Reading Radio, Inc. v. Fink*, 833 A.2d 199, 211 (Pa. Super. 2003) (*citing Strickland v. University of Scranton*, 700 A.2d 979, 985 (Pa. Super. 1997)).

The Court does not agree with GNC's contentions.[1] Count I clearly alleges that the contractual relationships at issue are Defendants' direct purchases from third party vendors, and it may reasonably be inferred from the allegations that GNC took some "purposeful action ... specifically intending to harm the existing relation ..." *Reading Radio*, 833 A.2d at 211. As for pecuniary loss, although Count I does not specify a precise amount of damages, the fair inference

---

[1] A federal court sitting in diversity must apply the substantive law as decided by the state's highest court. *Travelers Indem. Co. of Illinois v. DiBartolo*, 131 F.3d 343, 348 (3d Cir. 1997) (citation omitted). When the Pennsylvania Supreme Court has not directly addressed the issue before the Court, the Court must predict how the Pennsylvania Supreme Court would resolve the issue. *DiBartolo*, 131 F.3d at 348 (citation omitted). Applicable decisions of the Superior Court are to be accorded significant weight. *Id*. Moreover, carefully considered *dicta* from the Pennsylvania Supreme Court may also inform the Court's prediction. *Id*.

to be drawn is that Defendants have been financially harmed by the new policy. *See* Counterclaim at ¶ 78 ("Prior to GNC's May 2004 change in policy ..., Counterclaimants had a number of popular and profitable third party products ...."). Finally, with respect to the absence of privilege or justification, Count I clearly alleges that "GNC purposefully, impermissibly, and without privilege acted to interfere with" direct purchases from third party vendors. *Id*. at ¶ 77.

It may well be, as GNC contends, that "the Contracts between [Defendants] and GNC grant GNC the right and privilege to act in the manner complained of in Count One." Motion at 1. However, the Court finds that under the liberal standards of notice pleading, Count I suffices to state a claim for Tortious Interference (commonly referred to as Intentional Interference with an Existing or Prospective Contractual Relationship).

B. <u>Count II - Fraudulent Inducement/ Negligent Misrepresentation</u>

Count II alleges, in part, as follows:

> Counterclaimants, in 1997, at the time they were determining whether they wanted to purchase a GNC franchise sought to determine the integrity of GNC by reviewing and evaluating the nature of litigation between GNC and its franchisees found in the Uniform Franchise Offering Statement (UFOC) given by GNC to Counterclaimants.
>
> Specifically, upon reviewing the first listed lawsuit in the 1997 UFOC given them by GNC, Counterclaimants evaluated that the nature (*sic*) of a lawsuit brought by former franchisees Barbara and Arnold Savin.
>
> Counterclaimants logically concluded that as the lawsuit was settled without GNC paying any money to the Savins, it was of little consequence or merit, and did not reflect poorly on the way GNC treated its franchisees, nor was it a negative reflection of the relationship between GNC and one of its franchisees.
>
> To the contrary, however, the Savin lawsuit was settled ... by GNC relinquishing its claim for $269,348.06, and instead paying the Savins $325,000 ....
>
> At the time Counterclaimants were initially determining whether or not to become GNC franchisees, they sought to evaluate the integrity of the franchisor, GNC, and relied on the UFOC in making this determination.
>
> \*\*\*
>
> [Defendants] relied on the false and fraudulent statement made to them by GNC in its UFOC to their detriment regarding the Savin litigation and settlement.

Counterclaim at ¶¶ 92-96, 99.

GNC contends that Count II should be dismissed because 1) Defendants cannot prove the reliance elements of their claims because they rely on "post-franchise" information, 2) Defendants fail to allege an injury caused by the misrepresentation, 3) the "gist of the action" bars the claims, and 4) a merger clause bars the claims.  Motion at 1.

The Court need only discuss the gist of the action doctrine.[2]  Generally speaking, the doctrine bars tort claims which arise solely from a contract between the parties. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 n. 8 (3d Cir. 2002) (*citing Phico Insurance Co. v. Presbyterian Medical Services Corp.*, 663 A.2d 753, 757 (Pa. Super. 1995)).  The doctrine is based on the notion that the "important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 103-04 (3d Cir. 2001) (quoting *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 685 A.2d 581, 590 (Pa. Super. 1996)), *cert. denied*, *Ellwood City Forge Co. v. Bohler-Uddeholm America, Inc.*, 534 U.S. 1162 (2002); *see also* e*toll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002).

In a recent published opinion, the Honorable Arthur J. Schwab of this Court held that the gist of the action doctrine bars claims for fraud and negligent misrepresentation arising out of GNC's alleged "fail[ure] to disclose the alleged predatory pricing and marketing schemes in its Uniform Franchise Offering Circular ...." *Bishop v. GNC Franchising LLC*, 403 F. Supp. 2d 411, 416-17 (W.D. Pa. 2005).  In summary, Judge Schwab held that "[t]orts arising from the

---

[2] Although the Pennsylvania Supreme Court has never adopted the gist of the action doctrine, the Pennsylvania Superior Court and the Court of Appeals for the Third Circuit, as well as a number of United States District Courts, have predicted that it would.  *Williams v. Hilton Group PLC*, 93 Fed. Appx. 384, 385 (3d Cir. 2004); e*toll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002); *Air Products and Chemicals, Inc. v. Eaton Metal Products Co.*,  256 F. Supp. 2d 329 (E.D. Pa. 2003); *Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 833 n. 11 (E.D. Pa. 2000).

inducement to enter into contract are within the scope of the 'gist of the action' doctrine," and that various alleged misrepresentations in GNC's Uniform Franchise Offering Circular "sound in contract" and were "inextricably intertwined" with the franchisees' breach of contract claim against GNC. *Bishop*, 403 F. Supp. 2d at 417.[3] The Court finds the reasoning of Judge Schwab's opinion to be persuasive, and also finds itself unable to distinguish the allegations of Count II from the allegations at issue in *Bishop*. Therefore, Count II will be dismissed without prejudice.

C. <u>Count III - Breach of Contract and the Covenant of Good Faith and Fair Dealing</u>

Count III alleges that GNC breached its franchise agreements and an implied covenant of good faith and fair dealing by, *inter alia*, requiring Defendants to remodel their stores more often than required, "failing to disclose information relevant to [Defendants'] decision to purchase or renew its franchise," and by the imposition of "arbitrary and unreasonable standards of performance." Counterclaim at ¶ 102, 106-113, 118.

GNC contends that the claim for breach of contract[4] should be dismissed "because [Defendants] have not identified a contractual promise that GNC allegedly did not honor." Motion at 2. The Court does not agree. Count III explicitly alleges that GNC breached the franchise agreements by impermissibly exacting remodeling fees in the form of "reset fees." *See* Counterclaim at ¶¶ 113 ("GNC is improperly extracting, misappropriating and converting fees from [Defendants] and other similarly situated franchisees in violation of the remodeling terms and provisions of the franchise agreement ...").

---

[3] As in *Bishop*, the failure "to disclose information relevant to [Defendants'] decision to purchase or renew its franchise" is also alleged as part of Defendants' claim for breach of contract. *See* Counterclaim at ¶ 102.

[4] "Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quotations and citation omitted).

GNC also contends that the claim for breach of implied duty of good faith and fair dealing should be dismissed because "Pennsylvania law does not recognize an implied duty of good faith in the context alleged," and "the GNC Defendants' acts were authorized by contract and cannot constitute a breach of good faith." *Id*. The Court agrees with the first contention.[5] In *Bishop*, *supra*, Judge Schwab addressed the sufficiency of a fairly similar (if not identical) claim, to wit, that "GNC's conduct in performing the contract breached the implied covenant of good faith." *Bishop*, 403 F. Supp. 2d at 418. Judge Schwab noted that under Pennsylvania law, "[i]n the context of franchise agreements, a franchisor has a duty to act in good faith and with commercial reasonableness when terminating a franchise for reasons not explicit in the agreement." *Id*. (citing *Atlantic Richfield Co. v. Razumic*, 390 A.2d 736, 742 (1978)). After a thorough review of the relevant case law, Judge Schwab concluded that "a handful of Pennsylvania courts have considered the possibility of expanding the good faith duty beyond the termination exception of *Atlantic Richfield*, but none has yet done so." *Id*. The Court agrees with Judge Schwab's discussion of the applicable law, finds that the duty of good faith in the context of franchise agreements has not been expanded beyond the rule of *Atlantic Richfield*, and declines to expand the rule to cover the instant allegations. *See Camden County Board of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 541 (3d Cir. 2001) ("It is not the role of a federal court to expand or narrow state law in ways not foreshadowed by state precedent."); *see also Bishop*, 403 F. Supp. 2d at 419 ("In the absence of clear guidance from the Supreme Court of Pennsylvania or the Court of Appeals for the Third Circuit, this Court declines to extend the scope of duty.").

As recited above, Count III alleges that GNC acted in bad faith in a variety of ways. However, it is not alleged that GNC breached an implied covenant of good faith and fair dealing by terminating Defendants' franchises for reasons not explicit in the agreement. Therefore, the

---

[5] The Court finds that although the latter contention may be meritorious, such a determination should (at least in this case) not be made in the context of a motion to dismiss.

Court finds that Count III fails to state a claim for breach of an implied covenant of good faith and fair dealing. *Bishop*, 403 F. Supp. 2d at 418-19. Accordingly, this claim will be dismissed without prejudice.

D.  Leave to Amend

If a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). A district court must provide a plaintiff with an opportunity to amend even if it has not been requested. *Id*. Even if a plaintiff does not seek leave to amend her complaint after the defendant moves for dismissal, unless the district court finds that an amendment would be inequitable or futile, the Court must inform the plaintiff that she has leave to amend the complaint within a specified period of time. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002).

Although it appears unlikely that Defendants will be able to state viable claims for fraudulent inducement, negligent misrepresentation and breach of the covenant of good faith and fair dealing, the Court is unable to conclude that such amendment would be inequitable or futile. Therefore, in accordance with Third Circuit precedent, Defendants may amend their Counterclaim on or before July 21, 2006. If no Amended Counterclaim is filed on or before July 21, 2006, Plaintiffs shall reply to the Counterclaim on or before July 31, 2006. If an Amended Counterclaim is filed, Plaintiffs shall reply or otherwise plead thereto in accordance with Federal Rule of Civil Procedure 12(a)(2), *i.e.*, within twenty days.

## Conclusion

For the reasons hereinabove stated, Plaintiffs' Motion to Dismiss Counterclaims will be granted in part and denied in part. An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GNC FRANCHISING, LLC, formerly known as GNC FRANCHISING, INC. and GENERAL NUTRITION CORPORATION, )<br><br>Plaintiffs, )<br>v. )<br><br>SHABANA FARID, MAZHAR FARID and VITAL, INC., )<br><br>Defendants. ) | 2:05-cv-1741 |

## ORDER OF COURT

AND NOW, this 6th day of July, 2006, in accordance with the foregoing Memorandum Opinion it is hereby ORDERED, ADJUDGED and DECREED that Plaintiffs' Motion to Dismiss Counterclaims (*Document No. 11*) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' counterclaims for fraudulent inducement, negligent misrepresentation and breach of the covenant of good faith and fair dealing are **DISMISSED WITHOUT PREJUDICE**. In all other respects the Motion to Dismiss Counterclaims is **DENIED**. Defendants may amend their Counterclaim to state viable claims for said causes of action on or before **July 21, 2006.** If no Amended Counterclaim is filed on or before July 21, 2006, Plaintiffs shall reply to the Counterclaim on or before **July 31, 2006.** If an Amended Counterclaim is filed, Plaintiffs shall reply or otherwise plead thereto in accordance with Federal Rule of Civil Procedure 12(a)(2), *i.e.*, within twenty days.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:   Amy Kerr Parker, Esquire
      Email: aparker@mcguirewoods.com
      Gerald J. Stubenhofer, Esquire
      Email: gstubenhofer@mcguirewoods.com
      Gary R. Kelly, Esquire
      Email: gary-kelly@gnc-hq.com
      Julian E. Neiser, Esquire
      Email: jneiser@mcguirewoods.com
      Curtis L. Frisbie, Jr., Esquire
      Email: cfrisbie@gardere.com
      Randy D. Gordon, Esquire
      Email: rgordon@gardere.com
      Tamara S. Pullin, Essquire
      Email: tpullin@gardere.com


      Shabana Farid
      Mazhar Farid
      Vital, Inc.
      946 South Silver Star Way
      Anaheim, CA 92808
      **BY U.S. MAIL**


      Sandra L. Alven, Esquire
      Email: salven@rhslaw.com
      William J. Witte, Esquire
      Email: wjwitte@rhslaw.com
      Gerald A. Marks, Esquire
      Email: jerry@markslaw.net